NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2121
_____

CIRILLO CARDOZA,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A78-831-033)
Immigration Judge:  Honorable Mirlande Tadal

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 21, 2012
Before:  SLOVITER, CHAGARES and GREENBERG, Circuit Judges

(Opinion filed:  November 27, 2012)
_____

OPINION
_____

PER CURIAM

       Cirillo Cardozo, a citizen of India, entered the United States in April 2009.

He appeared before an Immigration Judge ("IJ") and conceded that he was removable for

entering without a valid entry document.  Immigration and Nationality Act ("INA")

§ 212(a)(7)(A)(i)(I) [8 U.S.C. § 1182(a)(7)(A)(i)(I)].  Cardozo applied for asylum,

withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"), based on allegations of religious persecution.

Cardozo testified that he is a practicing Catholic and that his brother, Caiten, converted to Islam. Cardozo acknowledged a longstanding dispute with Caiten over family property that was transferred to Cardozo in 1997. Apparently, Caiten believed that the property should have been transferred to him instead, and threatened to break Cardozo's legs and kill him. In October 2007, Caiten and his "Islamic friends" entered Cardozo's home in India, dragged him outside, and kicked, slapped, and burned him with cigarettes and a "hot rod" when he refused to convert to Islam. Cardozo admitted on cross-examination, however, that this assault was primarily related to the property dispute. Cardozo did not report this incident to the police because, according to his testimony, his brother had a good relationship with the authorities. On cross-examination, Cardozo claimed for the first time that he was threatened in India by "political ministers."

The IJ denied relief, finding that the "primary motive [for the 2007 assault] was for [Cardozo] to turn over the property to Caiten . . . ." According to the IJ, "this was a matter whereby [Cardozo] was involved in a personal feud with his brother over ownership of land . . . ." Thus, the IJ concluded that "[t]here is no evidence . . . that [Cardozo] was mistreated by the government of India, nor is there any evidence that Caiten, along with his ["Islamic friends"], were acting with impunity or were acting with the consent or acquiescence of the government, or that the government would be unwilling to protect [Cardozo] against his brother . . . ." Although Cardozo also claimed

2

that he was threatened by "political ministers" on account of his religion, the IJ stated that this testimony was not persuasive because it was "never brought on direct examination, nor was it made part of [Cardozo's] witness statement." The IJ also concluded that Cardozo had not established a well-founded fear of future persecution because the background materials that he submitted did not contain evidence that he would be mistreated or prevented from practicing Catholicism in his home state of Goa. Furthermore, the IJ found that there was no basis for granting relief under the CAT.

The Board of Immigration Appeals ("BIA") dismissed Cardozo's appeal. The BIA found no clear error in the IJ's conclusion that Cardozo's claim regarding the "political ministers" was not credible. In addition, although the Board assumed that Cardozo had established a nexus to a protected ground, it held that, while the record demonstrated "that there is some violence against Christians in India, the evidence is insufficient to establish that the government was unable or unwilling to protect [Cardozo] from his brother and his brother's associates." The BIA also concluded that the evidence was insufficient to establish a pattern or practice of persecution of Catholics in India. Because Cardozo did not establish eligibility for asylum, the Board held that he could not satisfy the more difficult withholding of removal standard. Finally, the BIA determined that Cardozo failed to meet the eligibility requirements for CAT relief because he did not establish that the Indian government would acquiesce to his torture. Cardozo filed a timely petition for review of the BIA's decision.

We have jurisdiction under INA § 242 [8 U.S.C. § 1252]. Because the BIA issued its own opinion, we review its decision rather than that of the IJ. Li v. Att'y Gen., 400

3

F.3d 157, 162 (3d Cir. 2005). But we also look to the decision of the IJ to the extent that the BIA defers to or adopts the IJ's reasoning. Chen v. Att'y Gen., 676 F.3d 112, 114 (3d Cir. 2011). Our review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Lin-Zheng v. Att'y Gen., 557 F.3d 147, 155 (3d Cir. 2009) (en banc) (internal citation omitted). We will uphold an adverse credibility determination under the substantial evidence standard "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Lin v. Att'y Gen., 543 F.3d 114, 119 (3d Cir. 2008) (internal citation omitted). Adverse credibility determinations based on speculation or conjecture, rather than on record evidence, are reversible. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

Cardozo claims that the Board should not have upheld the adverse credibility determination concerning his reference, for the first time on cross-examination, to being threatened by Indian "political ministers." Cardozo explained that he did not present this allegation in his asylum application or on direct examination because he feared reprisals from the ministers if he identified them by name.[1] Importantly, however, he has not adequately explained why he could not have referred to the threats without specifically identifying the ministers. See Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004) (holding

---

[1] Alternatively, Cardoza asserts that he "did mention the connection of [his] brother and his associates with political ministers in the written narrative he submitted with his [asylum] application." In statements submitted in connection with his asylum application, Cardoza claimed that his brother had "good contacts" with political ministers. This allegation, however, is materially different from his statement on cross-examination that "political ministers have threatened [him]."

4

that the omission of a material event from an asylum application may support an adverse credibility finding). Under the circumstances, we conclude that no reasonable adjudicator would be compelled to arrive at a conclusion contrary to that reached by the IJ and the BIA.

The BIA also properly held that, to the extent that Cardoza testified credibly, he was not eligible for relief. To establish eligibility for asylum on the basis of past persecution, an alien must make a credible showing that he suffered some harm rising to the level of persecution on account of a statutorily protected ground, and that it was committed by the government or forces the government is unwilling to control. Gao, 299 F.3d at 272. Religion is a protected ground under the INA. INA § 101(a)(42)(A) [8 U.S.C. § 1101(a)(42)(A)]. An applicant for asylum bears the burden of proof. Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001).

The BIA assumed that Cardozo established that his religion was "at least one central reason" for the alleged persecution by his brother. INA § 208(b)(1)(B)(i); see also Ndayshimiye v. Att'y Gen., 557 F.3d 124, 129-30 (3d Cir. 2009) (holding that an asylum applicant can demonstrate that conduct amounted to persecution so long as a central reason for the conduct was animus toward a protected ground, even if that motivation was not the sole or primary reason for the conduct). Nevertheless, the BIA held that Cardozo did not demonstrate that the government of India was unwilling or unable to protect him, or that he had established a pattern or practice of persecution of Catholics in India. We conclude that these conclusions are supported by substantial evidence.

5

An applicant is not required to prove that the government "refused" to protect him, only that the government was unwilling or unable to do so. Valdiviezo-Galdamez v. Att'y Gen., 502 F.3d 285, 289 (3d Cir. 2007). Here, Cardozo asserted that he did not report to the police that he was assaulted in 2007 by Caiten and his "Islamic friends" because Caiten had "good connections with the police." We conclude, however, that the background material belies Cardozo's assertion that the government was unwilling or unable to protect him.[2] See Ornelas-Chavez v. Gonzales, 458 F.3d 1052, 1058 (9th Cir. 2006) (holding that an applicant "need not have reported th[e] persecution to the authorities if he can convincingly establish that doing so would have been futile or [would] have subjected him to further abuse."). The record indicates that some state and local governments imposed limits on religious freedom, describes violence against Christians in various regions of India, and references a few instances of attacks on Christians in Cardoza's home state of Goa. Importantly, however, according to the State Department's International Religious Freedom Report, there is a concentration of Christians in Cardoza's home state of Goa, the Indian government "continued to implement an inclusive and secular platform that included respect for the right to religious freedom," and those responsible for religious-based violence have been prosecuted. This evidence demonstrates that the BIA also properly concluded that

---

[2] Cardozo claims that the IJ and the BIA "cherry-picked" evidence in the record concerning Indian "authorities' handling of sectarian violence." As noted below, however, the BIA did acknowledge the existence of violence against Christians in India. This Court has held that the BIA "'is not required to write an exegesis on every contention,' . . . but only to show that it has reviewed the record and grasped the movant's claims." Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) (internal

6

Cardozo failed to establish a pattern or practice of persecution against Catholics in India. Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) (holding that, in order to constitute a "pattern or practice," the persecution of a group must be "systemic, pervasive, or organized.").

In sum, a reasonable adjudicator would not be compelled to conclude that the BIA incorrectly rejected Cardozo's asylum claim. Because Cardozo cannot satisfy the asylum standard, he cannot satisfy the more difficult withholding of removal standard. Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003). Additionally, although Cardozo claimed that Caiten tortured him, Caiten is not an Indian official and Cardozo failed to establish that public officials would acquiescence to his torture. 8 C.F.R. § 1208.18(a)(1) (providing that the applicant must establish that he or she, more likely than not, will be subjected to torturous acts inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."). Thus, Cardozo did not demonstrate that he is entitled to protection under the CAT.

For the foregoing reasons, we will deny the petition for review.

---

citation omitted).